**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARBEL CONSUL,

     Plaintiff,

v.                                                          Case No. 3:21-cv-505-TJC-LLL

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

     Defendant.

_____

# <u>O R D E R</u>

This insurance bad faith case requires the Court to determine whether Defendant Progressive American Insurance Company violated its duty to its insured, Plaintiff Charbel Consul, by failing to settle a claim against Consul after a car accident. The case is before the Court on Progressive's Motion for Summary Judgment (Doc. 33) and Motion to Exclude the Testimony of Plaintiff's Bad Faith Expert, Michael Hook, Esq. (Doc. 42). Consul responded to both motions (Docs. 44, 47), and Progressive replied (Docs. 54, 55).

## I. FACTS

The facts are largely undisputed; how the law applies to these facts is contested. On September 6, 2016, Consul got into a car accident with William Choisser, who is both an attorney and a doctor. (Docs. 33-2 at 153–154; 38-1 at 5:5–11, 14:13–15). On the date of the accident, Consul carried a policy with

Progressive: bodily injury coverage of $10,000/per person and property damage coverage of $10,000/per accident. (Docs. 2-1; 36-1 at 43:12–16). Progressive was notified of the accident the same day it occurred, and Diana Forst and Melissa Wolfe were respectively assigned to the bodily injury and property damage claims. (Docs. 33-2 at 148, 154; 45-1 at 14:10–16, 15:6–12). Consul hit Choisser's car in the rear and asserts that a vehicle pulled out in front of him, causing the accident, but Progressive found that Consul was 100% at fault. (Docs. 33-2 at 131, 154; 41-1 at 17:5–22). Consul testifies that Choisser did not exhibit any signs of injury at the accident scene. (Doc. 41-1 at 20:3–12). Forst testifies that she mailed Consul a letter notifying Consul of the potential of excess exposure. (Doc. 36-1 at 43:21–44:10); see also (Docs. 33-8 at 1; 33-14).

Just three days after the accident, Forst spoke with Choisser's attorney, Matthew Posgay, and stated that she needed documents regarding Choisser's injuries and Choisser's wife's name. (Doc. 33-2 at 147); see (Doc. 36-1 at 134:4–135:13). Posgay stated he would demand policy limits and that his client's claim alone warranted tender of the policy limits. (Doc. 33-2 at 147). After some investigation, Progressive determined that Choisser's vehicle was worth $2,258.42. (Doc. 33-5 ¶¶ 6–7). Progressive offered $2,258.42 for the property damage (included in the offer was a request for the vehicle's title), but Posgay refused, saying his client needed at least $3,000–$4,000. (Doc. 33-2 at 138–40).

When asked, Posgay produced no evidence supporting his valuation of the vehicle. (Docs. 33-2 at 138; 33-5 ¶¶ 11–12).

After these conversations regarding the property damage claim, on October 17, 2016, Posgay sent a demand for the $10,000 bodily injury policy limit and $5,000 for the property damage to settle "all claims." (Doc. 33-6 at 1–2). The demand included Choisser's medical records and required Consul to complete a financial affidavit. Id. at 2–14. Forst contacted Consul's attorney, Christopher Campione, who had sent Progressive a letter informing Progressive that he represented Consul in the UM and PIP matters, to advise him of the demand. (Docs. 33-2 at 122, 124; 33-7; 33-8 at 1). It is unclear whether Campione asked that the demand and the affidavit be sent to him. See (Docs. 33-2 at 127; 34-1 at 81:11–15, 136:2–16). Campione helped Consul complete the financial affidavit. (Doc. 34-1 at 63:8–65:5). On November 15, 2016, Progressive met Choisser's demand in full, tendering the $10,000 bodily injury policy limit and $5,000 for the property claim. (Docs. 33-2 at 119; 33-10). Progressive also included instructions for Florida title completion and a proposed release that included both Choisser's and his wife's claims. (Docs. 33-2 at 119; 33-10). Forst tried several times to obtain Choisser's wife's name, to no avail. See (Doc. 33-2 at 116, 119, 122, 147). Forst then inadvertently included Choisser's ex-wife's name on the release after her own investigation. (Docs. 33-10 at 1–2; 36-1 at 137:11–16, 141:16–142:18; 38-1 at 23:16–17). Campione also sent Posgay the

completed financial affidavit. (Docs. 33-2 at 124; 34-1 at 68:6–16). It was clear

from the financial affidavit that Consul had no financial resources. (Doc. 33-9).

Posgay responded on December 1, 2016, stating that he did not represent

Choisser's wife and that "the settlement offer presented to you and your

company never stated nor implied that Dr. Choisser would surrender the title

to his motor vehicle in exchange for the payment of $5,000 for the damage done

to his vehicle." (Doc. 33-11). Posgay asked whether retention of salvage was a

condition. Id. On December 7, 2016, Forst replied that Choisser's wife would be

removed from the release if Posgay confirmed that Choisser's wife would not

pursue a consortium claim. (Doc. 33-12). Forst also stated that Choisser could

retain salvage but that she still needed the title to process it with the state. Id.

Campione was copied on Progressive's letters. (Docs. 33-10, 33-12). On

December 13, 2016, Posgay declined Progressive's "counter-offer."[1] (Doc. 33-

13).

Neither side sought to settle the case again until after Choisser filed suit

in November 2017. (Doc. 33-2 at 98). Posgay testifies that after he rejected the

counteroffer on December 13, 2016, the claims could not have been settled

within the policy limits. (Doc. 37-1 at 19:14–20:24). Before trial, the parties

---

[1] Progressive questions whether this was a counteroffer (Doc. 33 at 10, 12–13); however, as a part of the state court litigation, the state court determined that the settlement could not be enforced because the offers were not mirror images of each other (Doc. 33-2 at 52).

settled the property damage claim at mediation for $7,500. (Doc. 33-2 at 34). The parties could not agree on the bodily injury claim, so the case was tried, and the jury reached a verdict for Choisser, resulting in a judgment against Consul and in favor of Choisser for $1,254,505.00. (Docs. 2-3; 33-2 at 2, 34).

Consul then filed this single-count-bad-faith case against Progressive.[2] (Doc. 2). Progressive answered (Doc. 7) and filed the present summary judgment (Doc. 33) and <u>Daubert</u> motions (Doc. 42). On December 7, 2022, the Court held a hearing on the motions, the record of which is incorporated by reference. (Docs. 60, 63).

## II. MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." All evidence is viewed in the light most favorable to Consul. <u>See</u> <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1098 (11th Cir. 2014).

### A. Florida Bad Faith Jurisprudence

"Bad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating

---

[2] While there has been no official assignment of claims, the parties have an agreement that if Consul collects any money on his bad faith claim, the money will used to satisfy the underlying judgment against him in favor of Choisser. (Doc. 63 at 4:2–13).

fully with the insurer in the resolution of claims." <u>Berges v. Infinity Ins. Co.</u>, 896 So. 2d 665, 682 (Fla. 2004). "[I]n handling the defense of claims against its insured, the insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." <u>Harvey v. GEICO Gen. Ins. Co.</u>, 259 So. 3d 1, 6 (Fla. 2018) (quoting <u>Bos. Old Colony Ins. Co. v. Gutierrez</u>, 386 So. 2d 783, 785 (Fla. 1980)) (internal quotation marks omitted).

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

<u>Id.</u> at 6–7 (quoting <u>Bos. Old Colony</u>, 386 So. 2d at 785). "[T]he critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." <u>Id.</u> at 7. Courts must look at the totality of the circumstances to determine whether the insurer has acted in bad faith and "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." <u>Id.</u> (citation omitted). Further, "[a]ny damages claimed by the insured (or the victim standing in his shoes) 'must be caused by the insurer's bad faith.'" <u>Ilias v. USAA</u>

Gen. Indem. Co., 61 F.4th 1338, 1344 (11th Cir. 2023) (quoting Am. Builders Ins. Co. v. Southern-Owners Ins. Co., 56 F.4th 938, 945 (11th Cir. 2023)).[3] "In other words, a bad faith claim under Florida law has two elements: (1) bad faith conduct by the insurer, which (2) causes an excess judgment to be entered against the insured." Id. (citing Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 899 (Fla. 2010)). Finally, "[a]lthough bad faith is ordinarily a question for the jury," courts nevertheless grant summary judgment "where there is no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer." Eres v. Progressive Am. Ins. Co., 998 F.3d 1273, 1278 (11th Cir. 2021) (quoting Bos. Old Colony, 386 So. 2d at 785) (internal quotation marks, citations, and alterations omitted).

In its Motion for Summary Judgment, Progressive discusses three issues: (1) whether a valid offer to settle was ever made, (2) whether the handling of the consortium claim was improper, and (3) whether the property damage claim negotiation regarding relinquishment of the vehicle's title was improper. (Doc. 33). Consul raises two other issues: (1) whether it was appropriate for Progressive to communicate with Campione regarding Choisser's settlement demand instead of Consul directly and (2) whether an excess letter was sent to

---

[3] In Ilias, the Eleventh Circuit reversed a grant of summary judgment in a bad faith case. Ilias, 61 F.4th at 1350. In Am. Builders Ins., the Eleventh Circuit upheld a bad faith jury verdict. Am. Builders Ins., 56 F.4th at 941. However, both of these cases are readily distinguishable on their facts.

Consul. (Doc. 44 at 3, 6–7). Consul also raises the issue of whether Progressive acted in bad faith by not continuing to try to settle the case between when Posgay rejected Progressive's counteroffer in his December 13, 2016 letter and when the case was filed in November 2017. Id. at 23. At the hearing, the Court inquired further into this last issue and the parties filed supplemental briefs limited to this issue. (Docs. 62, 66). The Court will consider the issues in turn to determine whether the totality of the circumstances show a dispute of material fact regarding Progressive's alleged bad faith.

### B. Valid Offer to Settle

Progressive first argues that there is no dispute of material fact because Choisser never made a valid offer to settle; thus, bad faith could not have occurred. (Doc. 33 at 12–13). Progressive cites Kwiatkowski v. Allstate Ins. Co. in support. No. 2:14-CV-575-FTM-PAM-CM, 2017 WL 3671108, at *1 (M.D. Fla. Jan. 11, 2017), aff'd, 717 F. App'x 910 (11th Cir. 2017). But Kwiatkowski is distinguishable. In Kwiatkowski, the court held that the insurer did not have a duty to inform its insured of a letter from the claimant because the letter was not an offer. Id. at *4. Kwiatkowski does not hold that without a valid offer to settle, a bad faith claim cannot be maintained. See id.

Consul claims that Florida law does not require an offer to settle by the injured party to bring a bad faith claim. (Doc. 44 at 19–21). The Court agrees that Progressive's argument is meritless because Harvey does not impose such

8

a black-and-white test. See Harvey, 259 So. 3d at 7. The rule that Progressive urges is outdated. See Powell v. Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12, 14 (Fla. 3d DCA 1991) ("Although an offer of settlement was once considered a necessary element of a duty to settle, this court held . . . that an offer to settle is not a prerequisite to the imposition of liability for an insurer's bad faith refusal to settle, but is merely one factor to be considered.") (citations omitted). Rather, Harvey requires the Court to evaluate the totality of the circumstances when determining bad faith such that even if Choisser did not make an offer to settle, Progressive could still have acted in bad faith. See Harvey, 259 So. 3d at 7 (imposing an affirmative duty on insurance companies to initiate settlement talks and reaffirming the totality of the circumstances test); Snowden ex rel. Est. of Snowden v. Lumbermens Mut. Cas. Co., 358 F. Supp. 2d 1125, 1127 (N.D. Fla. 2003) (applying the totality of the circumstances test and holding "that the presence or lack of an offer to settle is merely one of many circumstances to consider in determining whether the insurance company adequately represented the interests of the insured") (citations omitted). In any event, Choisser did make a settlement offer on October 17, 2016.

### C. Release of Consortium Claims

Progressive next argues that its handling of the consortium claim was not in bad faith. (Doc. 33 at 14–20). Consul provides the following list of alleged deficiencies in Progressive's handling of the consortium claim:

- At all times, Progressive knew that Posgay did not represent the wife.

- For some unknown reason, Forst interpreted "all claims" in Choisser's October [17] letter to include any potential consortium claim.

- Forst conducted a deficient investigation that led her to conclude that the wife's name was Mary and included that name in the proposed release—even though Choisser had divorced Mary in 2000 and was married to Dana Marie Merritt for several years.

- After his December 1 letter in which Posgay said he did not represent the wife, Forst did not revise the proposed release to omit the wife.

- Forst did not contact Posgay to correct the wording in the December 7 letter, which she only now admits was improper.

- In fact, Forst insisted that the release include the wife unless Posgay wrote Progressive a letter stating that he would not pursue a consortium claim on her behalf.

- In the December 13 letter, Posgay again stated that he did not represent the wife, and thus could not waive any claims on her behalf.

- Forst believed that it was Posgay and Choisser's obligation to ask the wife about any potential consortium claim.

- Forst never attempted to contact the wife regarding a potential consortium claim, even though she had sent letters directly to claimants' spouses in the past.

(Doc. 44 at 21–22).

As a matter of law, Progressive did not act in bad faith in handling the consortium claim. Progressive was attempting to ensure that all potential claims against its insured would be settled, including any potential consortium claim. Forst contacted Posgay repeatedly to determine Choisser's wife's name,

10

to no avail. <u>See</u> (Doc. 33-2 at 116, 119, 122, 147). Forst then conducted an independent search, which returned an incorrect result. <u>See</u> (Docs. 36-1 at 137:11–16, 141:16–142:18; 33-10 at 1). It was reasonable for Forst to request that Posgay inform her of his client's wife's name and whether she would pursue a consortium claim. Forst was working on Consul's behalf to ensure that any consortium claim was included in the settlement of Choisser's claim. Indeed, as acknowledged by Consul at the hearing, if Progressive <u>did not</u> attempt to settle or release any potential consortium claim, it could have been at risk of a bad faith claim.[4]

Consul cites one case in support of his argument: <u>Eres v. Progressive Am. Ins. Co.</u>, 998 F.3d 1273 (11th Cir. 2021). In <u>Eres</u>, the Eleventh Circuit considered a scenario where Progressive provided an overbroad release that was not the mirror image of the demand. <u>Id.</u> at 1279. The Eleventh Circuit noted that an overbroad release can create a factual dispute regarding bad faith. <u>Id.</u> (citing <u>United Auto. Ins. Co. v. Estate of Levine</u>, 87 So. 3d 782, 787–88 (Fla. 3d DCA 2011) and <u>Otaola v. Cusano's Italian Bakery</u>, 103 So. 3d 993, 997 (Fla. 3d DCA 2012)). Considering the totality of the circumstances, the Eleventh Circuit held that there was no bad faith in part because Progressive offered to strike

---

[4] When asked at the hearing if an insurance company would be at risk if it settled a personal injury claim without considering a potential consortium claim, Consul admitted that there is a possibility the insurance company would be at risk. (Doc. 63 at 16:11–17:4).

11

the offending language. Id. Here, Progressive also provided Choisser and Posgay the opportunity to modify the language of the release:

> In reference to our proposed release, I have made several attempts to secure your client's wife's name for the release, but have been unsuccessful. Our investigation shows that Dr. Choisser's wife's name is Mary and we have added her, as such. If this is not correct, please advise me at your earliest convenience so we can change it, accordingly. Should the language on the drafts or proposed release not meet your specifications, please call me immediately . . . to discuss.

(Doc. 33-10) (emphasis added). Rather than proposing a different release, Posgay asked if Progressive was conditioning its offer on the release of Choisser's wife's claims. (Doc. 33-11). Progressive replied that if Choisser's wife's name was not on the release, it would need a letter stating that she would not be pursuing a consortium claim. (Doc. 33-12). After this letter from Progressive, Posgay declined the offer. (Doc. 33-13). The undisputed evidence shows that Progressive was reasonably trying to ensure that its insured did not get sued post-settlement on a consortium claim.

The Eleventh Circuit in Eres also noted that courts most often find bad faith in these scenarios when insurers include "obviously problematic" language in the release, such as a hold-harmless clause. Eres, 998 F.3d at 1279–80. Here, the language of the release is not obviously problematic; Progressive included a standard release of claims. (Doc. 33-10 at 2). Under the totality of the circumstances, including the uncertainty surrounding the potential consortium

claim, the reasonable release language, and the opportunity Progressive afforded Posgay and Choisser to propose different release language (an opportunity not acted upon), no reasonable jury could find that Progressive acted in bad faith regarding the consortium claim. See Harvey, 259 So. 3d at 10 (stating that "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured") (citation omitted); cf. Brink v. Direct Gen. Ins. Co., 38 F.4th 917, 935 (11th Cir. 2022) ("There is a difference . . . between focusing on a claimant's actions, which would be improper, and factoring a claimant's actions into the totality of the circumstances analysis, which is not improper.") (citation, emphasis, and internal quotation marks omitted).

### D. Property Damage Claim and Relinquishment of Title

Progressive next argues that Consul has not shown bad faith in its handling of the property damage claim because Progressive was required to process the title to the vehicle with the state because it was a total loss. (Doc. 33 at 20–25). Under Florida Statutes § 319.30(3)(b), "an insurance company that pays money as compensation for the total loss of a motor vehicle or mobile home shall obtain the certificate of title for the motor vehicle . . . and, within 72 hours after receiving such certificate of title, forward such title . . . to the department for processing." Progressive concluded that Choisser's vehicle was a total loss. (Doc. 33-5 ¶ 5). When Progressive agreed to Choisser's $5,000

property damage demand, it included Florida title completion instructions, which instructed Choisser to send Progressive the title within fourteen days. (Doc. 33-10 at 1, 5–6).

Consul argues that Progressive misunderstood the law because there is a possibility that Progressive was not required to take title. (Doc. 44 at 24–25). Under § 319.30(3)(a)(2),

> [a] motor vehicle or mobile home shall not be considered a "total loss" if the <u>insurance company</u> <u>and owner</u> of a motor vehicle or mobile home <u>agree to repair</u>, rather than to replace, the motor vehicle or mobile home. However, if the actual cost to repair the motor vehicle or mobile home to the insurance company exceeds 100 percent of the cost of replacing the wrecked or damaged motor vehicle or mobile home with one of like kind and quality, <u>the owner shall forward to the department</u>, within 72 hours after the agreement, a request to brand the certificate of title with the words "Total Loss Vehicle."

FLA. STAT. § 319.30(3)(a)(2) (emphasis added). Neither Choisser nor Posgay ever conceded that the vehicle was a total loss; however, Choisser and Posgay also never stated that Choisser wanted to repair the vehicle and never offered any evidence to Progressive of their valuation of the vehicle. <u>See</u> (Docs. 33-2 at 138; 33-5 ¶¶ 11–12). There is a scenario where Progressive did not have to take title to the vehicle, but it was reasonable for Progressive to request the title given its determination that the vehicle was a total loss and Choisser's silence regarding repairing the vehicle. In response to Choisser's objection, Progressive agreed to pay Choisser's full $5,000 demand for the property damage in addition

14

to allowing Choisser to retain salvage rights to the vehicle. (Doc. 33-12). But Progressive continued to request the title because it believed it was required by law to take the title. Id. Even if Progressive was not legally required to take title under Florida law (about which the Court expresses no opinion), Progressive had a good faith interpretation of the law. Progressive's actions therefore fall short of bad faith.

### E. Contact with Plaintiff and Excess Letter

Consul points out two possible factual issues of note. First, Consul states that Progressive did not directly contact Consul about the settlement of Choisser's claims because it incorrectly assumed Campione was Consul's attorney handling Choisser's claims, a position which, according to Consul, is "directly contrary" to Forst's notes and Campione's letter of representation. (Doc. 44 at 6–7). Second, Consul asserts there is evidence that Progressive did not send an excess letter to Consul, which traditionally warn insureds of the possibility of an excess judgment. Id. at 3. Insurers are obligated to "advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." Harvey, 259 So. 3d at 6–7 (quoting Bos. Old Colony, 386 So. 2d at 785).

As to the first issue, Campione's representation letter to Progressive states that Campione represents Consul "in regard to injuries sustained in the

above-referenced accident" and requests copies of the UM rejection and the PIP pay-out sheet, implying that Campione represented Consul with regard only to Consul's injuries. (Doc. 33-7). Forst, after speaking with Campione, also wrote in the claim notes that "[Campione] is representing NOD [Consul] for <u>his injury</u> claim." (Doc. 33-2 at 127) (emphasis added). However, there is no evidence that Campione ever objected to Progressive contacting him regarding Choisser's insurance claims and Consul testifies that he expected Campione to handle any communication with Progressive on Consul's behalf. (Doc. 41-1 at 43:7–25, 102:8–13). Campione helped Consul complete the financial affidavit and sent the affidavit directly to Posgay. (Doc. 34-1 at 63:11–24). Progressive did not act unreasonably in communicating with Campione.

As to the second issue regarding the excess letter, Forst testifies that in normal course she would have sent Consul an excess letter as soon as she was assigned the claim and saw he carried the minimum insurance limits. (Doc. 36-1 at 29:25–30:23). Progressive also provides copies of two excess letters, one of which was noted as being sent three days after the accident. (Docs. 33-8, 33-14). Consul testifies that he does not remember whether he received or read an excess letter. (Doc. 41-1 at 42:15–44:14). Consul also offers the testimony of Keith Pelkey, a litigation representative at Progressive, who testified that he searched records of this case and could not find a record that an excess letter was sent. (Doc. 46-1 at 34:5–38:17). However, Pelkey did not testify that an

excess letter was not sent. And Forst later testified that the letters were stored in a separate electronic file, and it is unclear if Pelkey searched that separate file. (Docs. 36-1 at 57:5–23; 46-1 at 35:6–20, 37:6–23). The excess letters sent to Consul and Campione were produced and identified by Forst. (Docs. 33-8; 33-14; 36-1 at 53:17–57:4). There is no dispute of material fact regarding the excess letter or communications with Consul.[5]

## F. Lack of Settlement Efforts after December 2016

After Posgay rejected Progressive's counteroffer in his December 13, 2016 letter, Progressive made no other offers to settle the case until after the underlying case was filed in November 2017. Progressive argues that the law does not require insurers to continue settlement negotiations if those negotiations would be futile. (Doc. 62 at 8) (citing Deary v. Progressive Am. Ins. Co., No. 21-11878, 2022 WL 2916358, at *4 (11th Cir. July 25, 2022) (unpublished opinion)).[6] In Deary, the Eleventh Circuit held that "[i]n Florida,

---

[5] Even if there was a dispute of material fact regarding Progressive's alleged bad faith in failing to send an excess letter, there is undisputed evidence that it would not have mattered. Consul testifies that he did not involve himself in the case and would have set aside any letters sent to him. (Doc. 41-1 at 38:8–17). Causation is an essential element of a bad faith claim. See Perera, 35 So. 3d at 900–01.

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

once it is clear that a claimant is unwilling to settle with one insured and give him a complete release, the insurance company has no further opportunity to give fair consideration to a reasonable settlement offer for that insured." <u>Deary</u>, 2022 WL 2916358, at *4 (internal quotation marks, citation, and alterations omitted). In <u>Deary</u>, the Eleventh Circuit concluded that further negotiations were futile after the injured party stated that the "settlement demand for 25,000 dollars [was] hereby withdrawn and [that she would] proceed with filing a Complaint for Damages." <u>Id.</u> at *2. Posgay's letter, while it made clear that Posgay was unlikely to consider any other settlement offers, did not contain nearly as unequivocal of a statement as the one in <u>Deary</u>. <u>See</u> (Doc. 33-13). However, even if this failure to pursue further settlement negotiations alone constituted bad faith (on which the Court expresses no opinion), this argument fails as a matter of law on causation.

Posgay unequivocally testified that the case could not have been settled within Consul's policy limits after Posgay's December 13, 2016 letter declining Progressive's counteroffer:

> **Q:** Was this a case that could have been settled, Mr. Posgay, after December [13th], 2016, for a payment within the policy limits?
>
> **A:** . . . I'd have to take a look at the correspondence as far as the date, but I think I did send a letter indicating when it could no longer be resolved because Progressive refused to accept our settlement offer without a counteroffer.

> **Q:** . . . <u>But whatever the date of that letter is, that would have been the last date that Progressive would have had an ability to settle this case, the Choisser case, within the policy limits; fair</u>?
>
> **A:** <u>For the bodily injury and for what we offered on the property damage, correct</u>.

(Doc. 37-1 at 19:14–20:5) (emphasis added). Because Progressive could not have settled within the policy limits after December 13, 2016, any lack of settlement negotiations after that date could not have caused the excess judgment. <u>See Perera</u>, 35 So. 3d at 900–01.

In his supplemental brief, Consul tries to show a material issue of fact regarding causation but misses the mark. [7] Consul points to Choisser's testimony to argue that Choisser, a sophisticated client, would not have necessarily adopted his lawyer's position. (Doc. 66 at 3). When asked if Choisser would settle "if Progressive had offered to pay [Choisser] the $10,000 bodily injury liability limit without [his] wife having to sign a release and without -- and the $5,000 property damage check without [him] having to agree that [his] vehicle was a total loss and to surrender the title," he testified "[w]e would have" settled. [8] (Docs. 38-1 at 81:4–10; 65-1). Upon a full reading of Choisser's

---

[7] Consul also argues that Posgay not cashing the checks from Progressive indicated his willingness to settle and that Progressive, in its own claim notes, thought the case could settle. (Doc. 66 at 2–3). These arguments do not go to the issue of whether Progressive's failure to engage in settlement negotiations after December 13, 2016, could have caused the excess judgment.

[8] In the original deposition transcript, when asked the above-quoted question, Choisser was recorded as testifying that "[w]e wouldn't" have settled.

testimony, it is clear that this statement merely evidences Choisser's amenability to settlement on his terms as laid out in the October 17, 2016 demand letter. See (Doc. 38-1 at 79:19–81:10). Choisser's testimony, even considered in the light most favorable to Consul, does not lead to the inference that Choisser would have tried to settle the case on his own after his lawyer, Posgay, declined Progressive's counteroffer on December 13, 2016.[9] As a matter of law, Progressive's failure to continue settlement negotiations after December 13, 2016, did not cause the excess judgment.

## III. CONCLUSION

Unlike many bad faith cases, Consul does not contend that Progressive unreasonably delayed settlement efforts. Early on, Progressive met Choisser's settlement demand in full, tendered the policy limits on the bodily injury claim and met the $5,000 property damage demand. It sought to protect its insured's interests by ensuring that the consortium claim was released. It agreed to allow

_____

(Doc. 38-1 at 81:10). The court reporter later corrected the transcript to reflect that Choisser actually testified that "[w]e would have" settled. See (Doc. 65-1 at 1).

[9] Consul cites Wood v. Progressive Select Ins. Co., in support of his argument that Progressive's lack of settlement discussions after December 13, 2016, caused the excess judgment. No. 21-14172-CIV, 2022 WL 18023504, at *4 (S.D. Fla. Oct. 21, 2022). In Wood, the plaintiffs' attorney in the underlying case also confirmed that after a certain date the underlying claim could not have been settled within the policy limits. Id. at 9. The court found that there was still a dispute of material fact as to the opportunity to settle. Id. at *9–10. But Wood is distinguishable on its facts.

Choisser to keep the vehicle as salvage. Choisser and Posgay would not take yes for an answer. And Posgay unequivocally testified that after his rejection of Progressive's settlement offer on December 13, 2016, Choisser would not have settled for policy limits. Cf. Kropilak v. 21st Century Ins. Co., 806 F.3d 1062, 1069 (11th Cir. 2015) ("While an insurer has a duty to act in good faith to offer the policy limits under appropriate circumstances[,] . . . it has no duty on behalf of its insured to agree to a consent judgment in excess of policy limits . . . ."). Even considering the totality of the circumstances in the light most favorable to Consul, there is no genuine dispute of material fact regarding Consul's bad faith claim. Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED**.

2. Defendant's Motion to Exclude the Testimony of Plaintiff's Bad Faith Expert, Michael Hook, Esq. (Doc. 42) is **DENIED as moot**.

3. The Clerk is directed to enter judgment in favor of Defendant Progressive American Insurance Company and against Plaintiff Charbel Consul.

4. The Clerk should terminate the pending motions and deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 30th day of March, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

ckm
Copies:

Counsel of record